UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RACHEL H. COHEN,

                     Plaintiff,

      -v-

METROPOLITAN LIFE INS. CO.
and BLUE SKY STUDIOS,

                  Defendants.

No. 00 Civ. 6112 (LTS)(FM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/10/07

## OPINION AND ORDER

APPEARANCES:

KOOB & MAGOOLAGHAN
  By: Elizabeth L. Koob, Esq.
19 Fulton Street, Suite 408
New York, NY 10038

*Attorneys for Plaintiff*

SCHNADER, HARRISON, SEGAL &
LEWIS
  By: Carl J. Schaerf, Esq.
140 Broadway, 31st Floor
New York, NY 10005
*Attorneys for Defendant*

LAURA TAYLOR SWAIN, United States District Judge

In this action brought pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), Plaintiff Rachel H. Cohen ("Plaintiff" or "Cohen") challenges the decision of Defendant Metropolitan Life Insurance Company ("MetLife") denying her application for benefits under a disability income plan maintained by Cohen's former employer, Defendant Blue Sky Studios ("Blue Sky"). Cohen also seeks to recover ERISA penalties against Blue Sky and MetLife for failure to supply certain documentation relating to the disability plan to Cohen on a timely basis. The Court has jurisdiction of this matter pursuant to 29 U.S.C. § 1132.

The matter is before the Court on Defendants' motion for summary judgment dismissing Plaintiff's complaint and Plaintiff's cross-motion for summary judgment in her favor. The Court has considered carefully the parties' extensive submissions in connection with these motions. For the reasons explained below, each motion is granted in part and denied in part and the matter is remanded to MetLife for a determination as to whether Plaintiff is Disabled within the meaning of the plan and, if so, for an award of benefits.

## BACKGROUND

The following material facts are undisputed, except as otherwise indicated. Plaintiff became an employee of defendant Blue Sky on March 18, 1996. Her responsibilities as a Technical Director required, among other things, that she be able to sit and concentrate for extended periods before a computer screen to create and edit computer-generated special effects and images.

At the time Plaintiff was hired, Blue Sky offered its employees long term disability benefits under a policy issued by MetLife to Blue Sky's predecessor company, Conceptual Graphic

Images, Inc. (the "CGI Policy"). Plaintiff elected to participate in the plan. At some point thereafter, MetLife issued Blue Sky a new certificate of long term disability insurance, replacing the CGI Policy. Plaintiff became a covered participant in the Blue Sky Studios, Inc. Employee Welfare Plan (the "LTD Plan") effective August 1, 1996. The LTD Plan is an employee welfare benefit plan governed by ERISA. Benefits under the LTD Plan are fully insured by MetLife. The LTD Plan is described in a summary plan description booklet labeled "Blue Sky Studios, Inc./Long Term Disability/Your Employee Benefit Plan" (the "Blue Sky SPD"). (Ex. A to Decl. of Laura Sullivan ("Sullivan Decl.") AR0001-AR 0018.)[1] The CGI Plan was described in a similar booklet (the "CGI SPD"). (Ex. B to Sullivan Decl.) No other documentation of the terms of the plans has been identified.

## Relevant Plan Terms

The Blue Sky SPD designates Blue Sky as the "Plan Administrator" and provides

for the submission to, and determination by, MetLife of applications for LTD Plan benefits.

The Blue Sky SPD includes the following clause providing for the exercise of

discretion by Plan fiduciaries in interpreting the LTD Plan and making benefit determinations

thereunder (the "Discretionary Clause"):

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for an entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

---

[1]     Unless otherwise indicated, documents cited with an "AR" prefix are found at Exhibit A to the Sullivan Declaration in support of Defendants' motion.

(Blue Sky SPD at AR 0017.)

The LTD Plan includes an exclusion from coverage for a disability "caused by, contributed to by, or resulting from a Pre-Existing Condition," unless the Plan participant was covered under the Plan for a full year before the disability began. "Pre-Existing Condition" is defined as "a Sickness or Injury for which [the participant] received Medical Advice or Treatment during the 3 month period immediately prior to [the participant's] effective date of [LTD Plan b]enefits." Based on Cohen's August 1, 1996, effective date of Plan benefits, her three-month look-back period for Pre-Existing Condition exclusion purposes under the LTD Plan ran from May 1 through July 31, 1996. The LTD Plan defines "Sickness" as "illness, disease or pregnancy"; "Injury" is defined in relevant part as "accidental bodily injury resulting independently of all other causes." The LTD Plan defines "Medical Advice or Treatment" as follows:

1. medical treatment or consultation;
2 medical care or services;
3. diagnostic tests; or
4. taking of prescribed drugs or medicines.

(Blue Sky SPD at AR 0011, 0008, 0009.) The Blue Sky SPD includes a special provision for the application of the Pre-Existing Condition exclusion in the event of a change in the plan's underlying insurance:

> If [the participant was] covered under the prior carrier's plan at the time of transfer . . ., benefits may be payable for a Disability due to a Pre-Existing Condition.
>
> a. If you satisfy This Plan's Pre-Existing Condition limitation, the benefit will be determined according to This Plan.
>
> b. If you cannot satisfy This Plan's Pre-Existing Condition limitation, then:
>
>   i. we will apply the Pre-Existing Condition limitation appearing in the prior carrier's plan; and
>
>   ii. if you would have satisfied the Pre-Existing Condition limitation

> under the prior carrier's plan, giving consideration towards
> continuous time covered under this plan and the prior carrier's plan,
> the benefit will be determined according to the lesser of This Plan or
> the prior carrier's plan.

> However, no benefit will be paid if you cannot satisfy the Pre-Existing Condition
> limitation under (a) or (b) above.

(Blue Sky SPD at AR 0012.) The CGI Policy's Pre-Existing Condition exclusion provision differs

from that of the Blue Sky Plan to the extent its Medical Advice or Treatment for Sickness or Injury

look-back is 90 days, rather than three months, from the effective date of plan benefits; Plaintiff's

effective date of plan benefits under the CGI Policy would have been June 19, 1996. Based on

Cohen's March 18, 1996, hire date, her look-back period under the CGI Policy's Pre-Existing

Condition exclusion would have been from March 21 through June 18, 1996.

### Plaintiff's Application for LTD Plan Benefits

Plaintiff's last day of work at Blue Sky was December 10, 1996.[2] She applied for

disability benefits under the LTD plan on March 18, 1997. Her application materials included an

Employee Statement identifying Dr. Susan Levine as her primary attending physician, dating her

treatment with Dr. Levine for Chronic Fatigue Syndrome ("CFS") from December 11, 1996,

identifying Dr. Steven Strauss, Dr. Leonard Belok and Dr. Nevin Mehta as other physicians who

had treated her within the preceding two years, identifying December 11, 1996, as the onset date of

her disability and representing that she was prevented from performing the duties of her job by

---

[2]     Plaintiff's evidence submitted in connection with the instant motion practice
        includes an affidavit and other materials relating to events, including an office
        relocation, medical treatment and a medical leave, occurring between August and
        December 1996. Because, as explained infra, the Court considers only the
        administrative record compiled by MetLife in reviewing MetLife's determination
        denying Plaintiff's application for benefits, Plaintiff's additional factual proffer is
        not summarized here.

"Blood pressure Fluctuations, muscle pain, Vertigo, Fever, stomach pain, Light Headedness, Swollen Glands, sensitivity to light, sensitivity to sound, sore throat, Cognitive fogginess, motor control problems, muscle spasms, muscle cramps, shortness of breath, etc." (AR 0021.) Cohen executed an authorization for MetLife to seek records from the identified medical providers.

Dr. Levine's Attending Physician Statement, which appears to be dated March 21, 1997, indicates a diagnosis of CFS with subjective symptoms of severe exhaustion, sore throat, muscle aches and short term memory loss. Dr. Levine lists December 11, 1996, as the initial date of treatment. (AR 077-78.) MetLife requested further medical records and information from Dr. Levine and from Plaintiff's primary care physician, Dr. Strauss.

In a June 19, 1997, letter Judith Amato, the MetLife Case Manager who reviewed Cohen's claim on MetLife's behalf, denied Cohen's claim on the basis of the Pre-Existing Condition exclusion provisions of the LTD Plan and the CGI Policy, stating that: "Review of copies of medical records received from your physician indicates that you received medical care during the time period of April 1996 through July 1996. Therefore, you do not satisfy the Pre-Existing Condition Limitations for the current MetLife Plan of Insurance . . . You do not meet the Pre-Existing Condition Limitations of the Prior MetLife Plan of Insurance as coverage would not begin until after . . . [you had] completed 90 days of coverage without medical treatment following the effective date of Personal Benefits which would be June 19, 1996." (AR 122.)[3] The letter informed Cohen of her rights to seek further review of the claim by MetLife and to submit further information.

---

[3]     The letter incorrectly identified the look-back period under the CGI Policy as the 90-day period following the effective date of benefits, rather than the 90-day period preceding that date. See Sullivan Decl. Ex. B.

On August 21, 1997, Elizabeth Koob, Esq., wrote to Ms. Amato indicating that she had been retained to represent Ms. Cohen and requesting an extension of the time to appeal. (AR 0124.) In a September 10, 1997, letter, Koob requested that MetLife provide her with "copies of the plans in effect on Ms. Cohen's date of hire (February, 1996) [sic] and date of claimed disability (December, 1996), as well as any amendments to those plans." (AR 131.) Amato's September 15, 1997, response instructed Koob to "obtain this information from the Policyholder, Blue Sky Studios, Inc. through Andrea Bailey, Personnel Director," at Blue Sky's offices in Harrison, NY.[4] Amato's letter was copied to Bailey and Cohen. (AR 0132.) Cohen wrote to Bailey at Blue Sky on September 10, 1997, requesting, among other things, "all information about the MetLife LTD Plan that was in effect on my first day of coverage: 3/18/96. I would like a policy description, and any other plan information that you may have." (PSJX2, ER 135.) Bailey's September 19, 1997, response enclosed only the Blue Sky SPD. (Cohen Aff. at ¶ 45(d) and 9/19/97 Bailey letter appended thereto.) In a September 22, 1997, letter, Cohen queried whether the Blue Sky SPD that Bailey had provided was "the MetLife policy that was in effect on my date of hire (March, 1996)? or on my date of disability (December, 1996)?", and further requested "all information about the MetLife LTD Plan that was in effect on my first day of coverage: 3/18/96. I would like a policy description, and any other plan information that you may have. Would you please also send me the same information for my date of disability: 12/11/96." (PSJXV2, ER136; Cohen Aff. ¶ 45(E).) Bailey's September 30, 1997, response enclosed another copy of the Blue Sky SPD. (PSJXV2, ER

---

[4]     Cohen herself had written to Bailey on December 17, 1996, requesting, among other things, "any sort of employee packet explaining the medical plan, short term disability, long term disability, and any other employee benefits." (Vol. 2 Pl.'s Summ. J. Exs. ("PSJXV2"), ER72-73.) Blue Sky provided her with a copy of the Blue Sky SPD on or about March 3, 1997. (Id., ER 198; Pl.'s R. 56.1 Stmt. ¶ 47; Def.'s Resp. to Pl.'s R. 56.1 Stmt. ¶ P47.)

43-61; Cohen Aff. ¶ 45(F).)

Cohen wrote again to Bailey on October 12, 1997, acknowledging receipt of the September 30, 1997, package, noting specifically that the enclosed document was "not a copy of the MetLife plan that was in effect on March 18, 1996, as I have previously requested on several occasions," and requesting "a copy of the policy that was in effect on March 18, 1996." (PSJXV2, ER 21-22.; Cohen Aff. ¶ 45(G).) In a March 18, 1998, letter to David Brown, CEO of Blue Sky, Cohen stated: "And, I have repeatedly requested from Ms. Andrea Bailey a copy of the Blue Sky policy booklet. I requested it several times in person, and several times in writing, and I have never received any. Would you please send me copies of the Blue Sky Policies as they were in March, 1996, August, 1996, December, 1996, and July, 1997." (PSJXV2, ER 36; Cohen Aff. ¶ 45(H).)

Cohen also made further written requests to Amato of MetLife for copies of the two plan documents, explaining that Blue Sky had provided her with only one document in response to her requests; MetLife again directed Cohen to request the information from Blue Sky, copying its letters to Blue Sky and on one occasion calling Blue Sky and leaving messages for the Personnel Director and another individual. (AR 0138, AR 0140-41, AR 0142, AR 0143-44, AR 0148.) Blue Sky never provided Cohen with a copy of the CGI Policy or CGI SPD. MetLife ultimately provided the CGI SPD to Cohen, but only with its March 19, 1998, letter denying Cohen's appeal.

By letter dated November 14, 1997, Koob appealed the benefit denial on Cohen's behalf. Koob's letter noted Blue Sky's continued failure to supply a copy of the plan as in effect on Cohen's date of hire, and argued that MetLife had improperly applied the Pre-Existing Condition exclusion. Koob's letter identified Cohen's disabling condition as CFS and argued that the medical documentation in MetLife's administrative claim file "provides no medical evidence or opinion

that Ms. Cohen had a Pre-Existing Condition of CFS, as that term is defined in the policy." (AR

151-53.) The letter was accompanied by an undated letter to MetLife from Cohen's primary care

physician, Dr. Strauss, reading as follows:

> Miss Rachel Cohen has been my patient since 1/26/94. During the period of 12/95
> through 7/96, I examined Miss Cohen on 12/29/95 and 4/29/96. I also referred her
> for consultation with Dr. Lenart Belok whose reports are dated 6/19/96 and 7/17/96.
> I consulted with Dr. Belok at that time and Chronic Fatigue Syndrome was
> considered and ruled out as a diagnosis. I am familiar with Chronic Fatigue
> Syndrome, however, there was insufficient basis for such a diagnosis at that time.
> Miss Cohen's symptoms did not meet the criteria set by the C.D.C. for Chronic
> Fatigue Syndrome.

(AR 0154.) A typewritten transcription of Dr. Strauss' treatment notes also accompanied Koob's

letter. While the appeal was still pending, Koob forwarded to MetLife a further report, dated

September 29, 1997, by Dr. Levine that had been prepared in connection with Cohen's application

for Social Security disability benefits. In that report Dr. Levine asserted, among other things, that

Cohen had been disabled since December 1996 by "the following symptoms, which began after

August 1996: severe exhaustion; low grade fevers; night sweats; muscle and joint aches; difficulty

concentrating; headaches; dizziness; palpitations; weight gain of 30 pounds; sleep disturbances;

nightmares; allergic symptoms; and neck spasms." (AR 0172.)

A note in MetLife's internal computer record indicates that Cohen's claim "was

reviewed at adjudication team meeting on 2/3/98 as part of best practice project per

recommendation of unit manager, Tom Cassell. Decision was to uphold denial based on language

of contract and refer to appeals unit via unit manager." (AR 0174.) The administrative record

provides no further information about the adjudication team meeting or the decision, which was not

communicated to Koob or Cohen.

On February 24, 1998, Amato, the MetLife Case Manager, made a written request

to Dr. Belok for his office notes from June 19, 1996. (AR 0175.) Neither Koob nor Cohen was notified of this request for information or provided with a copy of Belok's response, which apparently included a copy of report of an assessment, performed on June 26 and 30, 1997, by Scott Wetzler, Ph.D., in connection with Cohen's Social Security Disability benefit application. (See AR 0182-94.)

In a March 19, 1998, letter to Koob, Anne Stanton, a MetLife Technical Specialist, informed Koob that MetLife had completed "the full and fair review of the denial of Ms. Cohen's Long Term Disability Claim." The letter continued: "For the reasons noted below, it is our determination that the denial of her claim because of the Pre-Existing Conditions [sic] of the Plan was proper and we therefore must uphold the denial."[5] After outlining the relevant provisions of the Blue Sky and CGI SPDs, the letter addressed MetLife's analysis of Cohen's medical history as follows:

> Records show that Ms. Cohen was seen by Dr. Lennart Belok on June 19, 1996 for neurological consultation. She reported experiencing a 2 ½ year history of chronic tiredness. She also noted an on-the-job head trauma followed by headaches and dizzy spells. Experiences of abnormal sensations of movement suggesting disequilibrium for 1 ½ years or so were mentioned, as well as double vision, gait disturbance with tendency to bump into furniture while walking, and misplacing objects with her hand. Neurologic examination was basically unrevealing. Further diagnostic testing was recommended.
>
> On July 17, 1996, she again saw Dr. Belok for neurologic follow-up consultation. She felt less fatigued but continued to experience disequilibrium, mild balance difficulty, frequently recurrent sensations of dizziness, difficulty with coordination of gait, occasionally bumping into furniture and difficulty with judging her motor responses. Neurologic re-examination was essentially normal.
>
> In addition, Ms. Cohen had a diagnostic MRI of the head on July 8, 1996. Also, Dr. Navin Mehta noted on August 30, 1996 that Ms. Cohen's chronic fatigue syndrome with off-balance type of feeling started approximately 2 ½ years ago.

---

[5]     (AR 0204.)

A neuropsychological assessment of June 26 and 30, 1997, by Dr. Scott Wetzler states that symptoms of chronic fatigue syndrome were first observed in March, 1996 with significant deterioration in symptoms in October, 1996, and inability to work since December, 1996. In addition to extreme fatigue, Dr. Wetzler noted that Ms. Cohen had cognitive symptoms including being in a 'mental fog,' poor concentration, spatial disorientation, poor memory and word finding difficulty.

Between May 1, 1996 and August 1, 1996, Ms. Cohen sought medical advice or treatment for several of the symptoms which she states caused her to be unable to work. Although specific diagnoses for her illness/sickness may not have been established at the time she last worked, Ms. Cohen felt unable to perform the duties of her job because of blood pressure fluctuations, muscle pain, vertigo, fever, stomach pain, light headedness, swollen glands, sensitivity to light and sound, sore throat, cognitive fogginess, motor control problems, muscle spasms, shortness of breath, etc.

We again find that Ms. Cohen's claim cannot be approved because of the Plan's Pre-Existing Condition limitation. Therefore we also considered the Pre-Existing Condition limitation under the prior carrier's plan (MetLife also). A copy of that plan is enclosed in case Ms. Cohen's employer has not yet had the opportunity to send it to you.

The pre-existing provisions [sic] of the prior Plan are the same except for the time periods involved. The effective date of Ms. Cohen's coverage was June 19, 1996; coverage is excluded if an Employee received medical advice or treatment during the 90 day period immediately prior to the effective date of Personal Benefits (March 21, 1996 - June 19, 1996 in this case).

Dr. Steven Strauss' letter (undated) states that he examined Ms. Cohen on December 29, 1995 and April 29, 1996 and that chronic fatigue syndrome was ruled out. When he saw her on April 29, 1996 her complaints included hoarseness for one month, persistent exhaustion, bumping into things, 'spacing out,' feels like she's half asleep.

As previously noted, Ms. Cohen also saw Dr. Belok on June 19, 1996 for neurological consultation.

Accordingly, the Pre-Existing Condition limitation is not satisfied under the prior carrier's Plan. The denial of her claim on this basis is also appropriate.

This determination is the final decision on review and constitutes completion of the full and fair review required by Ms. Cohen's Plan and federal law.

(AR 0204-06.) In a March 19, 1996, letter to Blue Sky, Stanton identified herself as the person to

whom Cohen's claim had been "referred . . . for an independent review in connection with an

appeal of the denial of her Long Term Disability claim." (AR 0203.)

Neither of the MetLife employees who reviewed Plaintiff's claim consulted with any medically-trained individual in connection with that review. (Def.'s Resp. to Pl.'s R. 56.1 Stmt. ¶ P77.)

Following the issuance of the decision on appeal, Koob made additional submissions to MetLife on Cohen's behalf, requesting further review of the decision and submitting additional medical documentation in support of Cohen's contention that MetLife had misinterpreted the documentation it had considered in determining the appeal. (See Vol. 1 Pl.'s Summ. J. Exs. ("PSJXV1"), Post-Appeal Submissions.) MetLife did not respond to the submissions and did not make them part of its administrative record relating to Ms. Cohen's claim.

## DISCUSSION

> Summary judgment is warranted only upon a showing 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(c)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 . . . (1986). A genuine issue of material fact exists where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 . . . (1986). In assessing the record to determine whether there is such an issue, we view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all ambiguities in its favor, and 'when cross-motions for summary judgment are filed, "against the party whose motion is under consideration."' Tindall v. Poutlney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005) (Quoting Boy Scouts of Am. v. Wyman, 335 F.3d 80, 88 (2d Cir. 2003), cert. denied, 541 U.S. 903 ... (2004)).

Town of Southold v. Town of East Hampton, 477 F.3d 38, 46-47 (2d Cir. 2007) (parallel citations omitted).

## Standard of Review of MetLife's Decision

Under ERISA, plan documentation may give a plan fiduciary discretionary power to

construe doubtful plan terms. Where the fiduciary is given such authority, its "interpretation is reviewed for abuse of discretion." Sullivan v. LTV Aerospace and Defense Co., 82 F.3d 1251, 1255 (2d Cir. 1996) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989)).

Here, while it is undisputed that MetLife functioned as a fiduciary in its claims administration capacity, that the CGI and Blue Sky SPDs are the only known documentation of the LTD Plan's terms, and that the Blue Sky SPD includes a Discretionary Clause granting "Plan fiduciaries . . . discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan,"[6] Plaintiff argues that the deferential review standard should not apply because there is no documentation signed by the plan sponsor indicating specific adoption or approval of the Discretionary Clause. Plaintiff cites no legal authority for this proposition.

ERISA requires that a plan be maintained in writing; it does not specify the adoption formalities that must be followed by a plan sponsor in approving the terms of a plan. See 29 U.S.C. § 1102. There is no dispute that Blue Sky contracted with MetLife to maintain the Plan pursuant to a MetLife insurance policy, and that the LTD Plan's terms are described in the Blue Sky and CGI SPDs. Indeed, Plaintiff parses the SPD terms in making her case for eligibility for the benefits at issue here. There being no evidence that Blue Sky ever rejected or repudiated the Discretionary Clause aspect of the LTD Plan documentation proffered by MetLife, the Court finds that the Discretionary Clause is properly considered a Plan term and that it applies to MetLife's fiduciary determinations as claims administrator under Blue Sky's disability Plan.

Accordingly, the Court will apply the deferential abuse of discretion standard in

---

[6]      (AR 0017.)

reviewing MetLife's determination that Plaintiff is ineligible for Plan benefits by reason of the Pre-Existing Condition exclusion. Under this standard, a reviewing court determines "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Jordan v. Retirement Committee, 46 F.3d 1264, 1271 (2d Cir. 1995) (citation and internal quotation marks omitted). "The court may not upset a reasonable interpretation by the [fiduciary]." Id.

> Thus, an administrator's determination may not be disturbed so long as it was consistent with the plan's terms, 'based on a consideration of the relevant factors' and supported 'by substantial evidence.' Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995). Substantial evidence means 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker,' and 'requires more than a scintilla but less than a preponderance' of evidence.' Id.

Cook v. The New York Times Co. Long-Term, Disability Plan, No. 02 Civ. 9154 (GEL), 2004 WL 203111, *3 (S.D.N.Y. Jan. 30, 2004).

On review of MetLife's coverage determination in light of the LTD Plan's language and the medical information included in the administrative record upon which MetLife purportedly based its decision,[7] the Court finds that MetLife's decision denying Plaintiff's claim based on the Pre-Existing Condition exclusion provision of the LTD Plan fails even the deferential arbitrary and capricious standard.

### MetLife's Decision Denying Plaintiff's Claim Constituted an Abuse of Discretion

With an exception not here relevant, the Plan's Pre-Existing Condition exclusion denies coverage of a Disability "caused by, contributed to or resulting from" a "Sickness [(defined

---

[7]    As noted above, the Court has limited its review of the medical information relevant to the claim denial to the content of the administrative record compiled by MetLife. MetLife has appended its file to the Sullivan Declaration as Exhibit A.

as 'illness, disease or pregnancy')] for which [the participant] received Medical Advice or Treatment" during the specified look-back period. (Blue Sky SPD at AR 0011, 0008, 0009.) Neither of MetLife's decisions denying Plaintiff's claim determined that Plaintiff had suffered from an illness or disease during the look-back period, nor did either examine whether such an illness or disease "caused. . .or contributed to" her claimed disability, or whether the disability "result[ed] from" such an illness or disease.

The sponsor of a plan has the burden of demonstrating the applicability of a coverage exclusion. Cf. Miller v. Retirement Plan, 72 F.3d 1066, 1074 (2d Cir. 1995) (holding that participant bore burden of establishing medical necessity of benefit sought, where medical necessity provision was in "benefits" section of plan rather than "exclusions" section). In this case, MetLife both misconstrued the LTD Plan's terms and made assumptions unsupported by the administrative record. MetLife has failed to meet its burden of demonstrating the applicability of the Pre-Existing Condition exclusion. Even when the record is viewed in the light most favorable to MetLife, its decision to apply the Pre-Existing Condition exclusion was arbitrary, unreasonable and inconsistent with the relevant LTD Plan provisions.

MetLife's Case Manager initially denied Plaintiff's claim for the stated reason that Plaintiff "had medical care" during the three-month period preceding her effective date of benefits. (AR 122.) The claim denial letter further asserted that Plaintiff was required to have "completed 90 days of coverage *without medical treatment* following the effective date of Personal Benefits" under the prior plan in order to avoid coverage preclusion under the alternative formula. (Id. (Emphasis supplied.).) As explained above (see supra note 3), the Case Manager misconstrued the look-back period under the prior plan. That erroneous Plan interpretation pales in significance beside the fundamentally unreasonable interpretation of the Plan upon which the initial denial

rested – that receiving <u>any</u> medical care or treatment during a look-back period disqualified a participant from receiving disability benefits under the LTD Plan. The plain language of the Plan clearly requires more – the participant must suffer from a Sickness (defined as an illness or disease[8]) during the relevant period, that Sickness must cause or contribute to the claimed disabling condition (or, alternatively, the disabling condition must result from the Sickness), and the participant must have received Medical Advice or Treatment for that Sickness during the look-back period. MetLife's initial claim denial decision was based only on one aspect of one factor in this analysis – the fact that Plaintiff's medical records demonstrated that she had made medical visits or undergone tests during the April through July 1996 time frame.

MetLife's appellate decision is only somewhat more insightful, and likewise fails to evince a reasonable interpretation and application of the plain language of the Plan. The March 18, 1998, claim denial letter written by Ann Stanton, MetLife's Technical Specialist, explained that the initial benefit denial "was proper" because

> Between May 1, 1996 and August 1, 1996, Ms. Cohen *sought medical advice or treatment* for several of the *symptoms* which she states [in her disability benefits application] caused her to be unable to work. Although specific diagnoses for her illness/sickness may not have been established *at the time she last worked*, Ms. Cohen felt unable to perform the duties or her job because of [symptoms listed].
>
> * * *
>
> [C]overage is [also] excluded [under the prior plan's Pre-Existing Condition exclusion] if an Employee *received medical advice or treatment during* the 90-day period immediately prior to the effective date of Personal Benefits (March 21, 1996 to June 19, 1996 in this case).

[8]   The definition of "Sickness" also includes pregnancy. There is no evidence that Plaintiff was pregnant at any relevant time or that MetLife considered pregnancy in connection with her disability claim.

(AR 204-06. (Emphasis supplied.))[9] Stanton's catalogue of the aspects of the administrative record purportedly supporting the applicability of the Pre-Existing Condition exclusion makes it plain that the extensive medical history compiled by MetLife is devoid of any diagnostic basis for a conclusion that Cohen was suffering from a Sickness during either look-back period under the LTD Plan, much less that such Sickness caused, contributed or led to, her later claimed Disability. Rather, MetLife's determination merely identifies a degree of facial similarity between certain of the symptoms mentioned in Cohen's complaints to practitioners prior to and during the look-back period and those she cited many months later as preventing her from working. MetLife also cites conclusory medical history remarks by providers who did not examine Cohen during the time frames covered by the remarks, and who provided no diagnostic or analytical basis for the cited remarks.

Thus, MetLife cited a June 19, 1996, neurological consultation with Dr. Lennart Belok. Dr. Belok's report recites that Cohen had, among other things, a 2-1/2 year history of chronic tiredness. The Belok report does not, however, identify the basis of that statement, or attribute the tiredness to any underlying illness or disease. There is no indication that Dr. Belok had ever examined or treated Cohen prior to the June 19th visit, nor any indication that he had received information regarding Cohen's medical history from anyone other than Dr. Strauss, her primary physician.[10] Dr. Belok reported his "impression" upon his own examination as follows:

---

[9]     The actual cutoff date for the look-back period under the CGI Plan was June 18, 1996, the day before what would have been Cohen's Personal Benefits Effective Date under the CGI Plan.

[10]     As noted above, the administrative record includes a letter from Dr. Strauss in which he states that CFS was ruled out during the look-back period. (See AR 0154.)

"It is my opinion that this patient has symptoms suggesting a mild chronic recurrent vestibular insufficiency, to explain the sensations of apparent movement and the 'lack of coordination.' Her visual symptoms may be due to normal fatigue although central nervous system involvement cannot be excluded in view of this history." (AR 0185-86.) He recommended further evaluation "for possible central nervous pathology" and, "if her neurological symptoms persist," an MRI "to rule out a demyelinating disorder." (AR 0186.) The report does not address the significance, if any, of the chronic tiredness, and certainly does not relate it to the CFS of which Cohen complained in her disability benefit application the following March or, indeed, to any other illness.

Stanton's letter also cites a report of Cohen's July 17, 1996, follow-up consultation with Dr. Belok, noting that the neurological reexamination was "essentially normal." The MetLife letter also acknowledges that Dr. Belok reported that Cohen "felt less fatigued," and quotes his remark that Cohen "continued to experience disequilibrium, mild balance difficulty, frequently recurring sensations of dizziness, difficulty with coordination of gait, occasionally bumping into furniture and difficulty with judging her motor responses." (AR205, AR 0187.) MetLife does not acknowledge Dr. Belok's "opinion that this patient continues to have symptoms suggesting involvement of the vestibular pathways," his recommendation of further testing to rule out "peripheral and organ vestibular disturbances," his recommendation of a lumbar puncture to "evaluate for possible nervous system involvement or demyelinating disorder," or his recommendation of a drug to "combat[] the chronic fatigue seen with demyelinating disorders." (AR 0187.)

MetLife's letter notes that Cohen had "a diagnostic MRI of the head on July 8, 1996," but discusses neither the reason for the examination nor its result (which was "Normal

study"[11]), and cites no medical evidence tying it an illness or to the later claim of disability.

Stanton also cites a consultation after the look-back period – an August 30, 1996 report by Dr. Navin Mehta, who performed an otorhinolaryngological examination that was prompted by complaints of "dizziness . . . with double vision, nausea, vomiting and pain in the right ear with decreased hearing." Dr. Mehta diagnosed Plaintiff as having "labyrinthitis, vertigo, chronic tonsillitis and otitis." (AR0098.) MetLife does not discuss these diagnoses, however. Rather, Stanton's appeal denial letter quotes a line in Dr. Mehta's letter reciting that "Patient's chronic fatigue syndrome with offbalance type of feeling started approximately 2-1/2 years ago." (AR0205.) Dr. Mehta's letter does not on its face purport to diagnose CFS, nor does it explain the source of the information underlying the reference to CFS (other than saying that "past medical records were reviewed"), attribute the symptoms for which Dr. Mehta examined Cohen to CFS, or provide information that could reasonably be read to indicate that the illnesses he diagnosed caused or contributed to Cohen's later claimed disability. (See AR 0098.) It also bears noting that, because the date of Dr. Mehta's letter is outside the Pre-Existing Condition look-back periods under both the Blue Sky plan and the CGI Plan, it is not on its face indicative of receipt of Medical Treatment or Advice during either look-back period.

While MetLife acknowledges that its administrative record includes a letter from Plaintiff's primary physician, Dr. Steven Strauss, that states that he had examined Ms. Cohen on December 29, 1995, and April 29, 1996, and ruled out CFS, MetLife fails to note that the same letter provides additional detail as to the diagnostic criteria employed in reaching that conclusion and denies a connection between the Belok consultations and the presence of chronic fatigue

---

[11]     (AR 0101.)

syndrome during the look-back period, as follows:

> I also referred her for consultation with Dr. Lenart [sic] Belok whose reports are dated 6/19/96 and 7/17/96. I consulted with Dr. Belok at that time and Chronic Fatigue Syndrome was considered and ruled out as a diagnosis. I am familiar with Chronic Fatigue Syndrome, however there was insufficient basis for such a diagnosis at that time. Miss Cohen's symptoms did not meet the criteria set by the C.D.C. for Chronic Fatigue Syndrome.

(AR0154.)

Thus, none of the contemporaneous documentation of Medical Advice or Treatment relied upon by MetLife in connection with the look-back period establishes a relevant diagnosis or any medical basis for finding a causal, or even contributory, relationship between the symptoms for which Cohen was examined or treated and the Disability that she claimed in March 1997.[12] All that it demonstrates is that Cohen had some symptoms that were similar in kind to those she claimed had disabled her beginning in December 1996. Furthermore, the only diagnostic opinion in the record speaking to the question of whether Cohen suffered from CFS during the relevant period is negative. Other references to history of chronic fatigue or of chronic fatigue syndrome

---

[12]  MetLife's denial letter also cites a report of a June 1997 neuropsychological assessment performed by Scott Wetzler, Ph.D., in connection with Cohen's claim for federal disability benefits, noting that Dr. Wetzler "states that symptoms of chronic fatigue syndrome were first observed in March, 1996 with significant deterioration of symptoms in October, 1996, and inability to work since December, 1996. In addition to extreme fatigue, Dr. Wetzler noted that Ms. Cohen had cognitive symptoms including being in a 'mental fog,' poor concentration, spatial disorientation, poor memory and word finding difficulty." (AR 0205, describing AR 0191.) The cited passage comes from the "Background" section of Dr. Wetzler's report, which provides no indication that Dr. Wetzler diagnosed the presence of CFS in March 1996 or that the symptoms described in the letter were present during the look-back period. Indeed, after describing functional limitations claimed as a result of the listed symptoms, Dr. Wetzler remarked that "[t]hese impairments are in contrast to her premorbid status when she was a high functioning computer specialist who was proficient at mathematical skills and exercised often." (AR 0191.)

are in background sections of reports that reach conclusions pointing to other possible illnesses, or whose analytical content speaks to periods outside the look-back timetables.

The Pre-Existing Condition exclusion language of the Plan, whose applicability MetLife has the burden of establishing, requires much more than mere similarity of symptoms. MetLife's appellate determination applying the Pre-Existing Condition exclusion is neither consistent with the plain meaning of the applicable plan terms nor supported by substantial evidence, and thus fails the deferential arbitrary and capricious test. Cf. Miller, 72 F.3d at 1072.

MetLife's application of the Pre-Existing Condition exclusion must be rejected as arbitrary and capricious for the further reason that MetLife failed to provide Cohen with a full and fair review of her claim. ERISA requires that "every employee benefit plan shall . . . afford a reasonable opportunity to any participant, whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of a decision denying the claim." 29 U.S.C.A. § 1133 (West Supp. 2006). The Department of Labor regulations in effect at the relevant time required plans to establish "reasonable claims procedures," including a procedure "under which a claimant or his duly authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate . . . fiduciary . . ., and under which a full and fair review of the claim and its denial may be obtained." The regulation required every such procedure to provide that the claimant or his duly authorized representative could "[r]eview pertinent documents; and . . . [s]ubmit issues and comments in writing." 29 C.F.R. § 2560.503-1(b), (g) (1997).

Here, while MetLife provided Cohen and her attorney with copies of the administrative record as developed on the initial claim, it neither notified them that MetLife was seeking additional material from Cohen's treating professionals in connection with the appeal nor gave them copies of the materials to review so as to enable them to exercise their right to "[s]ubmit

issues and comment in writing" in connection with the formulation of MetLife's final determination on the claim. MetLife's failure to provide notice to Plaintiff of its consideration of materials in addition to those disclosed following its initial denial clearly deprived Plaintiff of the opportunity to submit comments and materials relevant to MetLife's determination. Indeed, when Cohen and her attorney did learn, after the appellate denial was issued, of the additional documentation and the conclusions MetLife had drawn from it, Koob forwarded supplemental medical documentation and arguments to MetLife, which refused to consider them. The supplemental submissions included statements by Drs. Mehta and Wetzler disavowing their references to history of CFS. (PSJXV1, Post-Appeal Submissions, SAR 53-58.) MetLife's failure to comply with ERISA's full and fair review mandate rendered its decision arbitrary and capricious. See Soron v. Liberty Life Assurance Co., 318 F. Supp. 2d 19, 28 (N.D.N.Y. 2004); Cook, 2004 WL 203111, at *17.

### The Benefit Claim will be Remanded to MetLife for a Disability Determination

"Because district courts are required to limit their review to the administrative record, it follows that, if upon review a district court concludes that the [fiduciary's] decision was arbitrary and capricious, it must remand to the [fiduciary] with instructions to consider additional evidence unless no new evidence could produce a reasonable decision permitting denial of the claim or remand would otherwise be a useless formality." Miller, 72 F.3d at 1071 (internal quotation marks and citation omitted). Here, although a remand for further administrative proceedings on the question of whether Plaintiff has met her burden of establishing that she was and is Disabled within the meaning of the Plan is necessary,[13] no remand of the Pre-Existing

---

[13]     MetLife's final claim denial letter specifically stated that it "does not represent a decision as to whether Ms. Cohen meets the total disability provision of the Plan."

Condition exclusion question is warranted. As noted above, MetLife has the burden of establishing the applicability of the exclusion. MetLife's administrative record demonstrates that it took extensive steps to develop a medical record sufficient to provide a basis for denying coverage on the basis of that provision; as demonstrated above, its efforts were unavailing.

MetLife has already solicited complete files and treatment notes from the providers who dealt with Plaintiff before, during, and for a substantial period of time after the look-back period. There is no indication that new evidence could produce a reasonable conclusion permitting denial of the claim based on the Pre-Existing Condition exclusion. Indeed, Plaintiff's post-appeal proffers indicate that an expanded record would only further undermine MetLife's interpretation of the records.

Having considered MetLife's entire administrative record, including Dr. Strauss' letter explaining that chronic fatigue syndrome was evaluated and ruled out during the relevant period and the absence of any medical analysis indicating that Ms. Cohen suffered from a Sickness for which she received Medical Advice or Treatment during the look-back periods and which caused or contributed to Ms. Cohen's claimed disability, the Court finds that there is no genuine issue of material fact as to the applicability of the Pre-Existing Condition exclusion. The Court determines as a matter of law that MetLife's invocation of the exclusion was arbitrary and capricious, and grants Plaintiff's summary judgment motion to the extent Plaintiff seeks reversal of MetLife's determination that the Pre-Existing Condition exclusion is applicable.

Plaintiff's benefit claim will be remanded to MetLife for a determination as to whether the Disability provisions of the Plan are satisfied and, if so, for an award of benefits. In

(AR 0207.)

connection with the proceedings on remand, Plaintiff must be afforded an opportunity to

supplement her prior submissions with additional information. Furthermore, MetLife must

disclose to Plaintiff, prior to any determination denying benefits, the information upon which it

expects to base its decision, to the extent such information was not previously disclosed, and

Plaintiff must be given an opportunity to respond to or rebut the information. See, e.g., Miller, 72

F.3d at 1074.

## Benefit Claims Against Blue Sky

There is no evidence indicating that Blue Sky was involved in the challenged claim

determination or that it plays any role in the provision of LTD Plan benefits. The Court finds that

Blue Sky is entitled as a matter of law to dismissal of Plaintiff's benefit-related claims against it.

## Penalty Claim

Arguing that Blue Sky and MetLife violated ERISA by failing to provide Plaintiff

with a copy of the CGI SPD despite numerous requests by Plaintiff and her attorney during the

claims and appeal periods, Plaintiff seeks an award of statutory penalties against both entities.

Section 502(c)) of ERISA provides in pertinent part that:

> Any administrator. . .who fails or refuses to comply with a request for any information
> which such administrator is required by this title to furnish to a participant or beneficiary
> (unless such failure or refusal results from matters reasonably beyond the control of the
> administrator) by mailing the material requested to the last known address of the requesting
> participant or beneficiary within 30 days after such request may in the court's discretion be
> personally liable to such participant or beneficiary in the amount of up to $100 a day from
> the date of such failure or refusal, and the court may in its discretion order such other relief
> as it deems proper. For purposes of this paragraph, each violation . . . with respect to any
> single participant or beneficiary, shall be treated as a separate violation.

29 U.S.C.A. § 1132(c)(1) (West Supp. 2006).[14]  Section 104(b) of ERISA requires that "[t]he

---

[14]     The maximum daily penalty amount has been raised to $110, effective for
violations occurring after July 29, 1997. 29 C.F.R. § 2575.502c-1 (2007).

administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, . . . and . . . other instruments under which the plan is established or operated." 29 U.S.C. A. § 1024(b)(4) (West Supp. 2006).

It is undisputed that Blue Sky was the designated Plan Administrator at all times relevant to this claim, that Plaintiff repeatedly directed written requests for all of the applicable SPD material (including the CGI SPD) to both Blue Sky and MetLife, and that neither Blue Sky nor MetLife provided Plaintiff with a copy of the CGI SPD (which set forth the look-back provisions applied under the Blue Sky Plan's alternative Pre-Existing Condition exclusion formula) until after Plaintiff's appeal had been denied. It is also undisputed that Plaintiff was a participant or beneficiary of the Plan.

Defendants argue that Plaintiff's motion for summary judgment on her penalty claim should be denied in its entirety because the claim was not plead in the Complaint. The Complaint did, however, cite section 1132(c)(1) of Title 29 (section 502(c)(1) of ERISA), albeit in the paragraph captioned "jurisdiction." That same paragraph also specifically cited provisions of ERISA authorizing claims for relief by plan participants. The Court finds that this reference was minimally sufficient to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Furthermore, in the Joint Preliminary Pretrial Statement prepared by the parties in March 2001 at the Court's direction, Plaintiff's Statement of Undisputed Facts included a reference to Blue Sky's failure "to timely respond to plaintiff's repeated written requests for copies of the applicable plans or plan summaries." (Preliminary Pretrial Statement § (f)(30).) In that the relevant material facts are undisputed and Defendants have proffered no information tending to show that they have been prejudiced in any way by the delayed elaboration of the claim, Plaintiff is not precluded from pressing her claim for nondisclosure penalties.

The undisputed facts, viewed in the light most favorable to Blue Sky, demonstrate that Blue Sky failed to provide Plaintiff with the requisite complete summary plan description documentation in a timely fashion, notwithstanding Plaintiff's specific, repeated requests for the SPD information pertaining to the prior coverage provisions that were relevant to her disability claim. Blue Sky thus violated the duty imposed upon it, as Plan Administrator, by section 104 of ERISA, to provide Plaintiff with the CGI SPD, which (to the extent it defined the look-back period applied in the alternative Pre-Existing Condition formulation under the LTD Plan) was both part of the LTD Plan SPD and an instrument under which the LTD Plan was established or operated. The Court finds that an award of a penalty is appropriate.

> An award of penalties and the amount of those penalties depend on five factors: '(1) the administrator's bad faith or intentional conduct; (2) the length of the delay; (3) the number of requests made; (4) the extent and importance of the documents withheld; and (5) the existence of any prejudice to the participant or beneficiary.' McDonald v. Pension Plan of NYSA-ILA Pension Trust Fund, 320 F.3d 151, 163 (2d Cir. 2003) (quoting Austin v. Ford, No. 95 Civ 3730, 1998 WL 88744, at *6 (S.D.N.Y. Mar. 2, 1998).

Campanilla v. Mason Tenders' District Council Pension Plan, 299 F. Supp. 2d 274, 293 (S.D.N.Y. 2004), aff'd mem., 132 Fed. Appx. 855 (2d Cir. 2005). Here, although Blue Sky's failure to provide the CGI SPD in response to Cohen's December 1996 letter is not necessarily indicative of bad faith or intentional conduct, Blue Sky's repeated failures from September 1997 onward to provide plaintiff with a copy of the CGI SPD despite numerous requests and additional requests from MetLife to do so, is, in the absence of any proffer by Blue Sky of a justification for its action, indicative of intentional conduct and bad faith.

The delay was lengthy. Indeed, Plaintiff did not receive a copy of the CGI SPD until after the March 1998 denial of her appeal, and then only from MetLife, which was the claims administrator. Although only one document was withheld it was an important one, in that it set

forth an significant component of the parameters of the Pre-Existing Condition exclusion that MetLife was invoking to deny Plaintiff's disability benefit claim. Its importance in this regard was heightened by the fact that MetLife's communications to Plaintiff misrepresented the provisions of the exclusionary language. Plaintiff's efforts to present her claim initially and on appeal were hampered because she was unable to parse accurately the relevant time periods in relation to the medical consultations upon which MetLife's exclusion analysis focused.

The Court finds, accordingly, that an award of a penalty against Blue Sky, as Plan Administrator, and in favor of Plaintiff is appropriate pursuant to 29 U.S.C. § 1132(c)(1). Blue Sky will be ordered to pay Plaintiff a penalty of $110 per day from for the 160-day period from October 10, 1997 (30 days after Plaintiff's first letter specifically requesting Plan documentation as of March 1996) to March 19, 1998, the date on which Plaintiff finally received the CGI SPD.

Plaintiff is not, however, entitled to recover a similar sanction against MetLife, which also failed to provide her with a copy of the CGI SPD. The ERISA penalty provision upon which Plaintiff relies applies by its terms only to a designated plan administrator's failure to disclose plan documentation on request.[15] It is undisputed that MetLife was not designated as administrator of the Blue Sky Plan. Accordingly, MetLife is entitled to summary judgment with respect to Plaintiff's penalty claim against it.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment reversing MetLife's determination denying her claim for benefits under Blue Sky's disability benefit plan on the basis

---

[15]   Section 1132(c)(1) provides for an assessment of penalties against an "administrator." ERISA defines "administrator" to mean "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C.A. § 1002(16)(A)(i) (West 1999).

of the Plan's Pre-Existing Condition exclusion is granted.  Plaintiff's motion is also granted to the extent she seeks summary judgment awarding her a penalty pursuant to ERISA § 502(c)(1) against defendant Blue Sky for failure to deliver a plan document in response to Plaintiff's written request. Plaintiff shall recover $17,600 from Blue Sky.  Plaintiff's motion for summary judgment is denied in all other respects.

Defendants' motion for summary judgment is granted to the extent that Plaintiff's benefit-related claims are dismissed as against Blue Sky and Plaintiff's disclosure penalty claim is dismissed as against Defendant MetLife.  The motion is denied in all other respects.

This matter is hereby remanded to MetLife for a determination as to whether Plaintiff is Disabled within the meaning of the Blue Sky Plan and, if she is Disabled, for an award of benefits.

The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

Dated: New York, New York
April 11, 2007

LAURA TAYLOR SWAIN
United States District Judge